## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| KARYN MAE CARPENTER, ) | CASE NO. 4:14-CV-01081 |
| ) | |
| Plaintiff, ) | |
| ) | MAGISTRATE JUDGE |
| v. ) | VECCHIARELLI |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social ) | |
| Security, ) | **MEMORANDUM OPINION AND** |
| ) | **ORDER** |
| Defendant. | |

Plaintiff, Karyn Mae Carpenter ("Plaintiff"), challenges the final decision of Defendant, Carolyn W. Colvin, Acting Commissioner of Social Security ("Commissioner"), denying her application for Period of Disability ("POD") and Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i), 423. This case is before the undersigned United States Magistrate Judge pursuant to the consent of the parties entered under the authority of 28 U.S.C. § 636(c)(2). For the reasons set forth below, the Commissioner's final decision is AFFIRMED.

### I. PROCEDURAL HISTORY

On June 24, 2011, Plaintiff filed her application for POD and DIB, alleging a disability onset date of January 1, 2008. (Transcript ("Tr.") 424.) The claims were denied initially and upon reconsideration, and Plaintiff requested a hearing before an administrative law judge ("ALJ"). (*Id.*) On November 5, 2012, an ALJ held Plaintiff's hearing. (*Id.*) Plaintiff participated in the hearing, was represented by counsel, and testified. (*Id.*) A vocational expert ("VE") also participated and testified. (*Id.*) On November 14, 2012, the ALJ found Plaintiff not disabled. (Tr. 421.) On May 5, 2014, the

Appeals Council declined to review the ALJ's decision, and the ALJ's decision became the Commissioner's final decision. (Tr. 1.)

On May 19, 2014, Plaintiff filed her complaint to challenge the Commissioner's final decision. (Doc. No. 1.) The parties have completed briefing in this case. (Doc. Nos. 16, 17.)

Plaintiff asserts the following assignments of error: (1) The ALJ erred in his questioning of the VE; (2) the ALJ erred in evaluating Plaintiff's credibility; and (3) the addition of voluminous medical records to the record by the Appeals Council requires remand.

## II.  EVIDENCE

### A.  Personal and Vocational Evidence

Plaintiff was born in August 1963 and was 49-years-old at the time of her administrative hearing. (Tr. 444.) She had at a least a high school education and was able to communicate in English. (Tr. 447.) She had past work experience as a file clerk, a medical records scanner, and an eyeglass cleaner. (Tr. 471.)

### B.  Medical Evidence

Contrary to this Court's initial order, Plaintiff did not include a Statement of Facts section in her Brief on the Merits, nor did she incorporate any relevant medical evidence in her Argument section.[1] Accordingly, in summarizing the relevant medical evidence, the

---

[1] The Court reminds Plaintiff that the Magistrate Judge's initial order in this case instructs that Plaintiff's Brief shall cite, by exact and specific transcript page number, all relevant facts in a "Facts" section. (Doc. No. 7.) Plaintiff has not been excused from complying with this order. The Court will not cull through the record and speculate on which portion of the record a party relies; indeed, the Court is not obligated to wade through and search the

2

Court relies heavily on the facts the Commissioner has provided in her Brief on the Merits.

A March 2008 imaging study of Plaintiff's chest revealed no sign of active chest disease. (Tr. 612.) In September 2008, Ramalingam Balamohan, M.D., examined Plaintiff, during which Plaintiff complained of chest pain on and off for one year. (Tr. 951-952.) Dr. Balamohan opined that Plaintiff's Lyme disease was not completely established, noting that she had only a "vague history of Lyme disease." (Tr. 951-952.) He found that Plaintiff had chronic, atypical chest pain, but that her symptoms appeared "noncardiac." (Tr. 952.) Dr. Balamohan also found that Plaintiff had "probable depression" and reported that she may need further evaluation and treatment of depression along with evaluation by an infectious disease physician. (*Id.*)

On February 16, 2009, Plaintiff underwent a cholecystectomy. (Tr. 770.) Based on the results of this procedure, Plaintiff was diagnosed with chronic cholecystitis and biliary dyskinesia. (*Id.*) On April 21, 2009, Plaintiff reported to Haris P. Ardeschna, M.D., a consulting physician, that she had extreme shortness of breath all the time, even while resting. (Tr. 705.) Despite her complaints, Plaintiff's pulmonary studies were normal. (Tr. 706.) Dr. Adreshna noted that a chest x-ray performed in March 2009 was normal. (*Id.*) Dr. Adreshna assessed Plaintiff with shortness of breath, no definite etiology; history of asthma, stable; and reflux esophagitis. (*Id.*) On April 24, 2009, a CT scan of Plaintiff's chest was negative. (Tr. 723.)

---

entire record for some specific facts that might support a party's claims. See *Centerior Serv. Co. v. ACME Scrap Iron & Metal*, 104 F. Supp.2d 729, 735 (N.D. Ohio 2000) (Gaughan, J.) (*citing InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989)). The Court expects Plaintiff's counsel to properly set forth all facts relevant to his arguments in future briefs unless otherwise directed by Court order.

In September 2012, Plaintiff's treating physician, Tamara Dunmoyer, M.D, prepared a one-page letter stating that she had treated Plaintiff since March 2008. (Tr. 803.) Dr. Dunmoyer indicated that Plaintiff had been diagnosed with Lyme disease in August 2009. (*Id.*) She also noted that Plaintiff had been diagnosed with diabetes and suffered from fibromyalgia and adrenal fatigue. (*Id.*) Dr. Dunmoyer opined that Plaintiff could not do house work or maintain a job. (*Id.*)

**C.     Hearing Testimony**

   **1.     Plaintiff's Hearing Testimony**

Plaintiff testified that the conditions that prevented her from working during the period of January 2008 to December 2008 included fibromyalgia and associated pain. (Tr. 452.) She also had diabetes and suffered from a "Lyme-like disease." (Tr. 453-454.) In addition, Plaintiff stated that she suffered from depression. (Tr. 455.) She took medication for depression and Lyme disease, but not for fibromyalgia. (Tr. 456.) Plaintiff described her physical condition during the relevant period as follows:

> I have bouts with my Lyme disease, and when I get the bouts, I don't have the energy to hardly do what is necessary to do, like doing dishes, making a quick meal. And then, once–if I get the medication I need, once I start feeling better, I have more, a little more energy, but I've never had my complete energy back since I've gotten the Lyme. . . . [In] 2008, I was pretty much, 75 percent of the whole year, on the bed, until they figured out what I had wrong; and then, it took me a couple months to feel better after I had the medicine.

(Tr. 458-459.) Plaintiff testified that in 2008, she did not cook, clean, or shop when she was experiencing a bout of Lyme disease. (Tr. 463-464.)

   **2.     Vocational Expert's Hearing Testimony**

Mr. Larry Bell, a vocational expert, testified at Plaintiff's hearing. The ALJ asked the

4

VE the following hypothetical question:

> If the testimony of [Plaintiff] would be considered good and credible, and what I mean by that is, if her testimony and her medical evidence are consistent, and assume that I find that, based on the medical evidence and her testimony, the ability to do the work that she did in the past, or any work, for that matter, would be precluded because of a marked limitation in concentration, persistence, and pace. When a person is, is affected to that degree in concentration, persistence, and pace, I want you to consider that she would be unable to complete a full eight-hour workday. She'd be off task a third of that eight-hour workday. She would also be absent from work. The absences would be more than two times, but perhaps as many as four or five, in a 30-day period. If that would be the case, Mr. Bell, would there be any jobs that you could identify?

(Tr. 473.) The VE testified that there would be no competitive employment for the individual described. (*Id.*)

Plaintiff's counsel asked the VE whether competitive employment would be precluded if an individual was unable to sustain work "in a clumping of time, such as if this claimant would be off work . . . for four to six weeks at a time, as opposed to a certain number of days per week or month." (Tr. 474.) The VE responded that competitive work would be precluded. (*Id.*)

### III.  STANDARD FOR DISABILITY

A claimant is entitled to receive benefits under the Social Security Act when she establishes disability within the meaning of the Act. 20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981). A claimant is considered disabled when she cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12

months." 20 C.F.R. § 416.905(a).

The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process. 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. 20 C.F.R. §§ 404.1520(b) and 416.920(b). Second, the claimant must show that she suffers from a "severe impairment" in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c) and 416.920(c). A "severe impairment" is one that "significantly limits . . . physical or mental ability to do basic work activities." *Abbot*, 905 F.2d at 923. Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d). Fourth, if the claimant's impairment does not prevent her from doing her past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f) and 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g), 404.1560(c), and 416.920(g).

### IV.  SUMMARY OF COMMISSIONER'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1. The claimant last met the insured status requirements of the Social Security Act on December 31, 2008.

2. The claimant did not engage in substantial gainful activity during the period from her alleged onset date of January 1, 2008, through her date

>   last insured of December 31, 2008.
>
> 3.  During the "period at issue," the claimant had the following medically determinable impairments: lyme's disease; history of asthma; probable depression; and chronic cholecystitis/biliary dyskinesia/reflux esophagitis.
>
> 4.  During the "period at issue," the claimant did not have an impairment or combination of impairments that significantly limited the ability to perform basic work-related activities for 12 consecutive months; therefore, the claimant did not have a severe impairment or combination of impairments.
>
> 5.  The claimant was not under a disability, as defined in the Social Security Act, at any time from January 1, 2008, the alleged onset date, through December 31, 2008, the date last insured.

(Tr. 426-430.)

## V.   LAW & ANALYSIS

### A.   Standard of Review

Judicial review of the Commissioner's decision is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010). Review must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ. *Id.* However, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by

substantial evidence in the record.  *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009).  Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Brainard*, 889 F.2d at 681.  A decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion.  *Ealy*, 594 F.3d at 512.

### B. Plaintiff's Assignments of Error

#### 1. The ALJ Erred in His Questioning of the VE.

In Plaintiff's first assignment of error, she quotes parts of the transcript of Plaintiff's administrative hearing, and argues, generally, that the ALJ should have either relied upon the testimony of the VE to find Plaintiff disabled, or explained why he rejected the VE's testimony.  (Plaintiff's Brief ("Pl.'s Br." at 6-9.)  While Plaintiff raises this issue, she includes no legal support for her argument, as she does not cite to any case law or regulations that would help guide this Court in analyzing the issue.  Without reference to case law or regulations supporting Plaintiff's general assertion, this Court cannot properly analyze Plaintiff's first assignment of error.  As a result of failing to explain, develop, or provide an analytical framework for this assigned error, Plaintiff has waived any argument on this point.  See *Rice v. Comm'r of Soc. Sec.*, 169 F. App'x 452, 454 (6th Cir.2006) ("It is well-established that 'issues averted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.'") (quoting *McPherson v. Kelsey*, 125 F.3d 989, 995–996 (6th Cir.1997)).

#### 2. The ALJ Erred in Evaluating Plaintiff's Credibility.

Plaintiff argues that the ALJ erred by using boilerplate language to find that Plaintiff

was not fully credible.  Credibility determinations regarding a claimant's subjective complaints rest with the ALJ, are entitled to considerable deference, and should not be discarded lightly.  See Siterlet v. Sec'y of Health & Human Servs., 823 F.2d 918, 920 (6th Cir. 1987); Villarreal v. Sec'y of Health & Human Servs., 818 F.2d 461, 463 (6th Cir. 1987).  However, the ALJ's credibility determinations must be reasonable and based on evidence from the record.  See Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 249 (6th Cir. 2007); Weaver v. Sec'y of Health & Human Servs., 722 F.2d 313, 312 (6th Cir. 1983).  The ALJ also must provide an adequate explanation for her credibility determination.  "It is not sufficient to make a conclusory statement 'that an individual's allegations have been considered' or that 'the allegations are (or are not) credible.'" S.S.R. 96-7p, 1996 WL 374186 at *4 (S.S.A.).  Rather, the determination "must contain specific reasons for the finding on credibility, supported by evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reason for that weight."  Id.

When a claimant complains of disabling pain, the Commissioner must apply a two-step test known as the "Duncan Test" to determine the credibility of such complaints.  See Felisky v. Bowen, 35 F.3d 1027, 1038-39 (6th Cir. 1994) (citing Duncan v. Sec'y of Health & Human Servs., 801 F.2d 847, 853 (6th Cir. 1986)).  First, the Commissioner must examine whether the objective medical evidence supports a finding of an underlying medical condition that could cause the alleged pain.  Id.  Second, if there is such an underlying medical condition, the Commissioner must examine whether the objective medical evidence confirms the alleged severity of pain, or, alternatively, whether the objectively established medical condition is of such a severity that it can reasonably be

expected to produce the alleged severity of pain.  *Id.*  In making this determination, the ALJ must consider all of the relevant evidence, including six different factors.[2]  See *Felisky,* 35 F.3d at 1039–40 (citing 20 C.F.R. § 404.1529(c)).  Courts are not required to discuss all of the relevant factors; an ALJ may satisfy the Duncan Test by considering most, if not all, of the relevant factors.  *Bowman v. Chater,* 132 F.3d 32 (Table), 1997 WL 764419, at *4 (6th Cir. Nov. 26, 1997) (per curiam).

Here, a review of the ALJ's decision reveals that the ALJ discussed most, if not all, of the relevant factors in his assessment of Plaintiff's physical and mental condition.  (Tr. 427-430.)  The ALJ examined Plaintiff's daily activities, her treatments and her responses to those treatments, the clinical examination findings, and the physician statements of record.  (*Id.*)  Thus, the ALJ considered the relevant evidence.

Moreover, in assessing Plaintiff's physical and mental limitations, the ALJ noted that Plaintiff "has medically determinable impairments that could reasonably be expected to cause some of the symptoms described, and the undersigned believes that [Plaintiff] does experience symptoms related to such impairments, but not to the frequency or debilitating

---

[2] These factors include the following:
    (1) the claimant's daily activities;
    (2) the location, duration, frequency, and intensity of the claimant's alleged pain;
    (3) precipitating and aggravating factors;
    (4) the type, dosage, effectiveness, and side effects of any medications taken to alleviate the pain;
    (5) treatments other than medication that the claimant has received to relieve the pain; and
    (6) any measures that the claimant takes to relieve his pain.

degree of severity alleged." (Tr. 430.) Thus, the ALJ did not reject Plaintiff's subjective complaints altogether; rather, he determined that Plaintiff's symptoms were not as severe as she alleged. Furthermore, in finding that Plaintiff was not disabled despite her allegations of debilitating symptoms, the ALJ discussed the following evidence:

- Although Plaintiff alleged fibromyalgia, Lyme disease, arthritis, scleroderma, diabetes, and depression limited her ability to sustain consistent employment since January 1, 2008, Plaintiff did not file for disability benefits until June 27, 2011. (Tr. 427.)

- Despite numerous allegations of severe impairments, the ALJ noted that in evaluating the relevant medical evidence of record, he found no legitimate evidence during the relevant period of time to substantiate the presence of fibromyalgia, arthritis, scleroderma, and diabetes. (Tr. 427.)

- The medical evidence of record was void of any diagnoses or documented consistent battery of complaints during the relevant period of time associated with Plaintiff's alleged conditions. (Tr. 427.)

- Although Plaintiff testified that she was bedridden for much of 2008, at her hearing she failed to recall having undergone any surgeries or hospitalizations during the period at issue. (Tr. 428.)

- A March 13, 2008, imaging study of Plaintiff's chest revealed no sign of active chest disease. (Tr. 428.) The only other medical evidence from the relevant period was a consultation with Dr. Balamohan from September 29, 2008. (*Id.*) Dr. Balmohan opined that Plaintiff's Lyme disease was not completely established. (*Id.*) The ALJ concluded that "[t]his medical evidence fails to enhance the claimant's assertions of the presence of Lyme disease subjecting her to greater than minimal functional limitations, but rather only again raises questions as to the presence of such a condition." (*Id.*)

- Plaintiff reported that an infectious disease specialist named Dr. Morrison treated her, but the ALJ noted that there was no apparent medical evidence of record from Dr. Morrison nor did there appear to be the presence of a medically documented consistent battery of symptoms during the relevant period of time so as to establish the presence of a severe impairment. (Tr. 428-429.)

- The ALJ gave "little weight" to the findings, conclusions, and opinions of Dr. Dunmoyer, because "there remains scarce medical evidence to

11

>   substantiate the purported diagnoses and limitations assessed by this doctor." (Tr. 429.)
>
> •   The ALJ noted that Plaintiff failed to show a consistent longitudinal record of medical treatment for any complaints and symptoms, or significant objective examinations/studies related to Type II Diabetes Mellitus, Fibromyalgia, or Lyme disease. (Tr. 430.)

Thus, the ALJ did not, as Plaintiff contends, use only boilerplate language in finding Plaintiff less than fully credible. Instead, the ALJ specifically compared Plaintiff's alleged symptoms to other evidence in the record and found that Plaintiff's subjective complaints were inconsistent with the objective evidence. This inconsistency is an appropriate basis for an adverse credibility finding. See *Walters v. Comm'r of Social Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) ("Discounting credibility . . . is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence.") Accordingly, Plaintiff's second assignment of error does not present a basis for remand of her case.

### 3.  The Addition of Voluminous Medical Records to the Record by the Appeals Council Post-Hearing Requires Remand.

Plaintiff moves the Court to order a remand of her case "for a new hearing to consider the voluminous medical records, which were made part of the Record by the Appeals Council post-hearing." (Pl.'s Br. at 12.) While Plaintiff raises this issue, she does not identify the records to which she is referring, nor does she include any legal support for her argument that would help guide this Court in analyzing whether remand to consider additional evidence would be appropriate. As a result, Plaintiff has waived any argument on this point.

## VI.  CONCLUSION

For the foregoing reasons, the Commissioner's final decision is AFFIRMED.

**IT IS SO ORDERED**.

s/ <i>Nancy A. Vecchiarelli</i><br>U.S. Magistrate Judge

Date: March 12, 2015